IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        **Plaintiff,**<br><br>v.<br><br>**BENJAMIN P. CUSTIS (01),**<br><br>        **Defendant.** | Case No. 22-20057-01-DDC |

**MEMORANDUM AND ORDER**

Defendant Benjamin P. Custis filed a "Motion for Relocation." *See* Doc. 42. It asks the court "to order him moved from USP Leavenworth to another pretrial holding facility for his personal safety." *Id.* at 3. Earlier in the case, the court ordered Mr. Custis detained pending trial on two counts of burglary of a licensed firearms dealer. *See* Docs. 7 (Detention Order) and 15 (Indictment). Highly summarized, Mr. Custis's motion contends that:

- Mr. Custis, while in general population at USP Leavenworth, was attacked by other inmates there on the mistaken belief that he was a "snitch." Doc. 42 at 2.

- Following the attack, the detention facility placed Mr. Custis in the Special Housing Unit (SHU), which restricted "his access to family phone calls, time outside his cell, personal hygiene, and his discovery." *Id.*

- His counsel contacted the United States Marshal Service (USMS) to request Mr. Custis's relocation to a different detention facility. USMS responded "that no county jail"—alternative suppliers of detention facilities for defendants charged in this judicial district—would accept him. This outcome, USMS reported, "was based on Mr. Custis's reported behavior during transport and court appearances."[1] *Id.*

- According to Mr. Custis, authorities at USP Leavenworth are "threatening to move him back to general population." *Id.* at 3. He perceives this as "no-win situation. If he refuses [to return to general population,] he will be written up for refusing movement. If he goes back to general population, he will face another beating or worse." *Id.*

---

[1] Apparently, this reference referred to Mr. Custis allegedly refusing to enter the courtroom for certain court appearances (and in one instance, refusing to leave the courtroom).

The court conducted a hearing on Mr. Custis's motion on February 2, 2023. For reasons explained below, the court respectfully denies his motion.

## Analysis

### A. Controlling Legal Principles

The Supreme Court has explained how our constitutional design apportions control over prisons and detention facilities:

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters. We further observe that, on occasion, prison administrators may be "experts" only by Act of Congress or of a state legislature. But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of Government, not the Judicial.

*Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (citations, internal quotation marks, and footnotes omitted).

Our Circuit sharpened *Bell*'s point by discussing how it applied to pretrial detainees—as opposed to prisoners already convicted of crime. Applying the body of case law extant in 1997 to a qualified immunity defense, the Circuit explained:

> By [1997] the Supreme Court had held that the Fourteenth Amendment's guarantee of due process prohibits *any* punishment of those awaiting trial. Punishment may be constitutionally acceptable for persons convicted of crimes— at least so long as it doesn't amount to "cruel and unusual" punishment as defined by *Estelle* and *Hudson*. But punishment is *never* constitutionally permissible for presumptively innocent individuals awaiting trial.

> Where exactly do we draw the line between what does and doesn't constitute "punishment"? Historically, the government has enjoyed the authority to detain until trial those defendants who pose a flight risk. And no doubt those who find themselves detained in this manner experience a great many restrictions on their liberty—restrictions many of us would regard as punishment in themselves. But when do these restrictions pass, as a matter of law, from constitutionally acceptable to constitutionally impermissible?
>
> *Bell* tells us the answer turns on the answers to two questions. First, we must ask whether an "expressed intent to punish on the part of detention facility officials" exists. 441 U.S. at 538. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective. *Id.* at 539. So, for example, the government may have a legitimate (nonpunitive) interest in ensuring a defendant's presence at trial and may (reasonably) keep him in custody pending trial if he proves a flight risk. Likewise, the government may have a legitimate interest in ensuring the safety and order of the facilities where it houses pretrial detainees. Restraints bearing a reasonable relationship to interests like these do not constitute punishment "even if they are discomforting." *Id.* at 540. At the same time, throwing a detainee in a dungeon and keeping him shackled there "may ensure his presence at trial and preserve the security of the institution," but "it would be difficult to conceive of a situation where conditions so harsh" would be reasonably related to any purpose except punishment. *Id.* at 539 n. 20.

*Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (quotation cleaned up).

Finally, and binding like *Bell* and *Blackmon* but persuasive, and more specific to the question at hand, is Magistrate Judge Bredar's thoughtful opinion in *United States v. Wallen*, 177 F. Supp. 2d 455 (D. Md. 2001). Addressing a motion just like the one here, Judge Bredar identified the court's role in deciding the location of a defendant detained pending trial: "Under normal circumstances it is for the Marshal to determine the *place* of detention. The Court's only role is to enforce Constitutional safeguards relating to conditions of confinement, access to legal counsel, etc." *Id.* at 456 n.2. Concluding that placement in a detention center with "inadequate design and deficient implementation of the medication record system" may imperil the detainee's Fifth Amendment right, the Maryland court ordered the United States Marshal Service to detain defendant in a specific location, *i.e.*, "in an infirmary or in a hospital." *Id.* at 458–59.

3

### B. Application to This Case's Facts

Applying these controlling authorities and principles, the court concludes that Mr. Custis hasn't demonstrated that he deserves the relief his motion seeks, *i.e.*, "order him moved from USP Leavenworth to another pretrial holding facility for his personal safety." Doc. 42 at 3. It's the current assertions that doom his motion to this result.

Mr. Custis doesn't assert that USP Leavenworth has or is about to deprive him of a constitutionally protected interest. Instead, he comes to the court with the allegation that USP Leavenworth hasn't provided him the version of protection he prefers—detention in a different location where he can enjoy full "access to family phone calls, time outside of his cell, personal hygiene, and his discovery." *Id.* at 2. The Constitution doesn't promise detainees this level of deference. Given the degree of "judicial deference" required by binding authority, the court concludes that the United States Marshal Service and its provider—USP Leavenworth—haven't deprived Mr. Custis of any constitutional right. Instead, he concedes that the detention facility, taking steps to protect him, placed him in the SHU following an attack by other inmates. So far so good. But now, he asserts, USP Leavenworth "is threatening to move him back to general population,"—the place where he sustained the earlier attack. *See id.* at 3. His motion concedes that he may refuse that relocation—but if he does, "he will be written up for refusing[.]" *Id.* On the other hand, if he goes along with the relocating, "he will face another beating or worse." *Id.*

In short, Mr. Custis does not bring to court allegations—much less facts—that his detainers have punished him, are punishing him now or otherwise have deprived him of a constitutional right. Nor has Mr. Custis alleged that the restriction he complains about "bears no reasonable relationship to any legitimate governmental objective." *Blackmon*, 734 F.3d at 1241. Given his failure to do so, the court defers to the "wide-ranging deference" extended to those

4

providing Mr. Custis's pretrial detention.  *Bell*, 441 U.S. at 547.  The court thus declines to order them to relocate Mr. Custis to another detention facility.

**THE COURT DENIES** defendant Benjamin P. Custis's Motion for Relocation (Doc. 42).

**IT IS SO ORDERED.**

**Dated this 21st day of March, 2023, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**